Carr. J.
I think the decree palpably erroneous. The great objects of a court of equity are, to do complete justice by settling the rights of all persons interested in the subject of the suit, to make the performance of the orders of the court perfectly safe, and to prevent future litigation and multiplicity of suits. To these ends, it is necessary that all persons interested in the matter, should be before tbo court, in such way as to be bound by its decree. If the bill omit some who are interested, or if, in the progress of the suit, a new interest arises in one, not a party, it is the practice of every day to change the proceedings, either by amended or supplemental bill, so as to bring these new parties before the court: and lord Ilardtoicke says, “it is frequently known, that after a cause is gone into, and even thoroughly heard, yet the court is compelled to let it stand over for want of parties.” Jones v. Jones, 3 Atk. 111. This bill was filed against the administrator and heirs of Mallory: it, claimed the amount of a bond binding the heirs; suggested that there was a deficiency of the personal assets; and, in that case, prayed to subject to the. payment of the debt, the real estate of Mallory, which consisted of a house and lot in Norfolk. The heirs answered, admitting the defect of personal assets, and also that their father died seized of the house and lot, but alleging, that, since his death, this property had been sold, under a decree of the circuit court of the U. States, for a debt due the U. States from Mallory, as collector of the port of Norfolk, and purchased by JJmely and King. Here *412 is, in truth and substance, a disclaimer; a fact disclosed, * shewing that the heirs, by proceedings under the decree of a competent tribunal, have been divested of all title and interest in the property, and the title transferred to other persons whose names are given. The fact is brought directly before the court: it is put in issue. What, then, should the court have done? Perhaps, as the defendants did not file as part of their answers, the record of the suit in the federal court, it was not improper in the chancellor to refer this matter to the master, as he did. But when his report came in, with this record forming a part of it, shewing a regular proceeding in a court of record; the decree ordering the sale of this house and lot, and the report of the marshal, that he had sold to King and Lively, that they had paid the purchase money, and received a deed, and the final decree approving and confirming all this; surely it was time for the court to look into this matter. These were not pendente lite purchasers, in the proper meaning of that phrase. They claimed under Mallory's title, but not by voluntary alienation. The chancellor, then, was bound to notice their tide. He could not decide upon it, nor even discuss it, without having the claimants before him. The property was wholly unrepresented: the heirs had disclaimed, and others had their title: how was it possible, under these circumstances, to decree a sale of the land ? Will it be said, that this might be done, because as such decree would not bind the purchasers, it could not injure them? I answer, that the very fact of its not binding them, convicts it of error. The court is by its rule, to have all the interests represented, in order to bind all rights, to settle every thing and cut up future litigation by the roots; but here, a right is brought to its knowledge, a right standing on record evidence; and without touching it, it decreed a sale of the property; thus sowing the seed of future litigation, instead of cutting it up; for when this house and lot shall be sold under this decree, how will the purchaser get possession? King and Lively hold under their deed: he must sue them, and the whole race is to be run over again. I hold, then, that so soon as this title was thus *413 brought to the knowledge of the court, it should have laid the plaintiff under a rule to make these purchasers parties, or have his bill dismissed; and that to render a decree without having them before it, was clear error.
There is another reason against such a decree. It is directly contrary to Lane v. Tidball, Gilm. 130. There, this court said, that equity ought to injoin the sale of land by trustees, where the title was under a cloud, and full value could not probably be got for it. Here, the court of equity is itself the agent to subject this land to the hammer, when the cloud upon the title is so dark and lowering, that no prudent man would think of risking his money. The plaintiff would probably buy it in for a trifle.
It will be observed, that I have said nothing of the validity of the title claimed under the decree of the federal court. I think it would be wrong to do so, on two grounds: 1. that this is an appeal from an interlocutory decree, where we are only to correct what the chancellor has done amiss, and as to this point he has done nothing; and 2. because as nothing we could say as to this title, could bind it while unrepresented, we ought not to touch it at all: it is not before us.
I think the decree should be reversed, and the cause sent back for such proceedings as I have stated.
Cabell, J. concurred.
Tucker, P.
I doubt whether the parties before the court have any ground of complaint. There is no decree against King as administrator of Mallory ; and he is not a party in his own right, and cannot appeal in that right. As to the heirs, they have no interest, the property having been sold under a decree which bound them.
Decree reversed, and cause remanded.